UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELIEL VASQUEZ, | : | Civil Action No. 07-1350 (JAP) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| JASON RUTHERFORD, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Plaintiff Eliel Garcia Vasquez ("Plaintiff") for Leave to File Late Claim.  Defendant the State of New Jersey and New Jersey Department of Transportation ("State ") and Defendant City of Lambertville ("City") oppose the motion.  Plaintiff's decedent was fatally injured when she was struck by a car in Lambertville, New Jersey in April 2006.  In March 2007, Plaintiff filed a complaint alleging that a road defect might have contributed to the accident.  Before filing the claim against the public entities, Plaintiff filed Notice of Claim pursuant to the New Jersey Tort Claims Act.  In the present Motion, Plaintiff argues that he filed Notice of Claim within the statutory window of ninety days after accrual of the claim on January 31, 2007.  Alternatively, Plaintiff argues that Notice of Claim was filed within one year after accrual of the claim due to extraordinary circumstances and therefore, should be considered timely filed.  The Court reviewed the written submissions of the parties and conducted oral argument on July 19, 2007.  For the reasons that follow, Plaintiff's Motion for Leave to File Late Claim is

granted.

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      *Factual Background.*

On April 28, 2006, a 23 year-old citizen of Mexico, Marcela Martinez-Torres ("Ms. Torres"), was struck by a car driven by Jason Ruthenford when she was crossing Route 165 in Lambertville, New Jersey.  (Pl.'s Br. at 1-2).  On May 1, 2006, Ms. Torres died as a result of her injuries.  Id. at 2.

On or around May 25, 2006, Plaintiff, who was a friend of Ms. Torres, contacted a law firm, Bergley, Carlin & Mandio, LLP ("Plaintiff's counsel"), regarding Ms. Torres's accident.  Id.  An unidentified New Jersey attorney subsequently advised Plaintiff to abandon the idea of filing a complaint on behalf of Ms. Torres's estate because Ms. Torres had been an undocumented alien.  Id.  Plaintiff's counsel made several unsuccessful attempts to contact Plaintiff, and on August 10, 2006 Plaintiff eventually reconnected with Plaintiff's counsel.  Id.  Plaintiff's counsel advised Plaintiff that Ms. Torres's estate might have a cause of action arising from her death without regard to her immigration status.  Id.  Around that time Plaintiff began to seek an appointment as Administrator of Ms. Torres's estate.  Id.

Plaintiff had difficulty locating and contacting Ms. Torres's family in Mexico.  Id.  In January 2007, Plaintiff traveled to Mexico and obtained the official permission of Ms. Torres's parents to be a representative of Ms. Torres's estate.  Id.  Plaintiff returned to the United States in February 2007 and on February 20, 2007 he was officially appointed as Administrator of Ms. Torres's estate.  Id.

On or around June 2, 2006 Plaintiff's co-counsel, New Jersey attorney S. Curtis Seifert

("Plaintiff's co-counsel"), was informed that a police accident report regarding Ms. Torres's accident ("police report") had been completed. Id. 2-3. Subsequently, Plaintiff's counsel and co-counsel made numerous unsuccessful attempts to obtain the police report from both the Lambertville Police Department and the Hunterdon County Prosecutor's Office. Id. Specifically, on June 7, 2006, Plaintiff's counsel received a letter from the Hunterdon County Prosecutor's Office which expressly refused to share any information with regard to Ms. Torres' accident. Id. at 3. On August 21, 2006 Plaintiff's co-counsel wrote a letter to the Hunterdon County Prosecutor's Office requesting the police report, and on September 7, 2006 he received a response that the police report could not be obtained. Id. Finally, on November 11, 2006 Plaintiff's counsel and co-counsel visited the Hunterdon County Prosecutor's Office, but no one was available to talk to them about Ms. Torres's accident. Id. According to the Hunterdon County Prosecutor's Office, the police report still was not available as of May 8, 2007 because the investigation of the accident had not been officially completed. (Def. State of N.J. Opp. Br. at 8).

On January 31, 2007 Plaintiff's counsel obtained an article that had been published in a local Lambertville newspaper on January 25, 2007. (Pl.'s Br. at 3). According to the article, a new traffic light was approved for installation in the vicinity of Ms. Torres's accident. Id. The article observed that over the past several years, numerous auto accidents had occurred near the site of Ms. Torres's accident. Id. at 3-4. The article quoted Lambertville Police Director Bruce Cocuzza who said that in 2005 ten percent of all accidents in Lambertville had occurred near the site where Ms. Torres was subsequently struck by a car. Id. at 4. The article also noted that Lambertville Mayor Del Vecchio had long been calling for road safety improvements at this site. Id. According to Plaintiff's counsel, it was the January 25, 2007 article that first put both Plaintiff and Plaintiff's counsel on notice that

"a  safety problem due to the design of the roadway" may have caused  Ms. Torres's accident.  Id.

On or around February 9, 2007, another newspaper article was published in the Trenton Times.  Id.  This article named Mr. Stefan Slaby as a witness to Ms. Torres's accident.  Id.  Previously, Plaintiff's counsel was not aware of any witness to Ms. Torres's accident.  Id.  According to the article, Mr. Slaby witnessed the accident as he stood outside his auto repair shop.  Id.  The article also attributed a statement to Mr. Staby that he had seen a lot of accidents in the area during sixteen years of conducting his business near the spot where Ms. Torres was struck.  Id.  According to the February 9, 2007 article, a new traffic light was recently installed near the site of Ms. Torres's accident, and Lambertville Mayor Del Vecchio had been trying for years to limit the speed of motor vehicles in the area.  Id.  at 4-5.  Based on the information contained in the February 9, 2007 article, Plaintiff's counsel sent a private  investigator to question Mr. Slaby.  Id. at 5.  Mr. Slaby stated that Ms. Torres was crossing Route 615 at the pedestrian crosswalk when she was struck by the car.  Id.  According to Mr. Slaby, there was no pedestrian warning sign at the site when Mr. Torres's accident occurred.  Id.

Plaintiff's counsel states that neither Plaintiff nor Plaintiff's counsel had any information before January 31, 2007 that Ms. Torres was crossing Route 615 at the designated pedestrian crossing, or that the State and/or the City might have been negligent in designing the highway and/or intersection in the area where Ms. Torres was fatally struck and injured.  Id.

**B.**     ***Procedural History***

On February 7, 2007, Plaintiff's counsel forwarded a Notice of Claim letter to both the City and the State.  (Pl.'s Br. at 4).  On March 23, 2007 Plaintiff filed a complaint against Jason Ruthenford, the State, and the City.  (See Dkt. no. 07-1350, entry no. 1).

On May 11, 2007, Plaintiff filed a Motion to File Notice of Late Claim.  (See Dkt. no. 07-1350, entries no. 5-8).  Plaintiff argues that (1) Plaintiff's notice of late claim was provided within ninety days from the date of accrual of Plaintiff's claim in accordance with N.J.S.A. 59:8-8, or that alternatively, (2) Plaintiff is entitled to Notice of Late Claim in accordance with N.J.S.A. 59:8-9 because of the existence of extraordinary circumstances and because Defendants have not been substantially prejudiced.  (Pl.'s Br. at 6-11).  On the first point Plaintiff argues that the date of accrual of his claim against Defendants should be January 31, 2007 when Plaintiff's counsel first read the article describing Ms. Torres's accident and possibility of Defendants' involvement into the accident.  (Pl.'s Br. at 6).  On the second point, according to Plaintiff, the fact that neither the police report no any witnesses were available to him after the accident and that he had difficulties locating Ms. Torres's parents in Mexico constitute extraordinary circumstances justifying Notice of Late Claim.  (Pl.'s Br. at 8-9).

On May 22, 2007, the City filed a Brief in Opposition to Plaintiff's Motion to File Notice of Late Claim.  (See Dkt. no. 07-1350, entry no. 10).  The City argues that Plaintiff failed to file Notice of Claim within ninety days after accrual of the claim and that Plaintiff failed to establish any extraordinary circumstances justifying Notice of Late Claim.  (Def. City's Opp. Br. at 2).  The City states that Plaintiff's failure to timely file Notice of Claim caused substantial prejudice and precluded the City from conducting proper investigation of Ms. Torres's accident.  Id. at 9.  Additionally, the City points out that the road where the accident occurred is under control of the State of New Jersey and under no circumstances can the City be liable for the accident.  Id. at 10-12.

On May 29, 2007 the State also filed a Brief in Opposition to Plaintiff's Motion to File Notice of Late Claim.  (See Dkt. no. 07-1350, entry no. 11).  The State argues that Plaintiff should

5

not be entitled to application of the discovery rule, that Plaintiff has not showed any extraordinary

circumstances justifying filing Notice of Late Claim, and that the State is prejudiced because Plaintiff

did not timely file Notice of Claim.  (Def. State of N.J. Opp. Br. at 15, 27, 37).

## II.    DISCUSSION

In 1972, the New Jersey legislature enacted the Tort Claims Act which significantly limits

one's ability to bring a tort claim against a public entity or public employee. Beauchamp v. Amedio,

164 N.J. 111, 115-116 (2000).  One such limitation concerns the time frame for bringing a lawsuit

against a public entity or public employee: "[a] claim relating to a cause of action for death or for

injury or damage to person or to property shall be presented . . . not later than the ninetieth day after

accrual of the cause of action."  N.J.S.A. 59:8-8 (emphasis added).

N.J.S.A. 59:8-9 "Notice of Late Claim" establishes an exception to the above 90-day rule:

> A claimant who fails to file notice of his claim within 90 days as provided in section
> 59:8-8 of [the Tort Claims Act], may, in discretion of a judge . . . , be permitted to file
> such notice at any time within one year after the accrual of his claim provided that the
> public entity or the public employee has not been substantially prejudiced thereby.
> Application to the court for permission to file a late notice of claim shall be made
> upon motion supported by affidavits based upon personal knowledge of the affiant
> showing sufficient reasons constituting extraordinary circumstances for his failure to
> file notice of claim within the period of time prescribed by section 59:8-8 of [the Tort
> Claims Act] or to file a motion seeking leave to file a late notice of claim within a
> reasonable time thereafter . . . .

N.J.S.A. 59:8-9 (emphasis added).

Therefore, in order to determine whether Notice of Claim under the Tort Claims Act was

timely filed, one should undertake a sequential analysis. Beauchamp, 164 N.J. at 118.  The first step

is to determine when the claim accrued.  The so-called discovery rule is then a part of such inquiry

because the date of accrual of the claim can be tolled.  Id.  As long as the date of accrual is

established, the next step is to determine whether the notice of claim to a public entity was filed

within the statutory period of ninety days.  Id.  If yes, the notice of claim was timely filed. If not, the

final step is to determine whether a late notice of claim is justified by any extraordinary

circumstances.  Id. at 118-119.

*A.*      *Discovery Rule*

According to the Tort Claims Act, "[a]ccrual shall mean the date on which the claim

accrued."  N.J.S.A. 59:8-1.  The comment to N.J.S.A. 59:8-1 provides that the term accrual under

the Tort Claims Act shall be defined according to relevant law in the private sector.  Beauchamp, 164

N.J. at 116 (citation omitted).  As established by New Jersey case law, the date of accrual of a claim

in cases of tortious conduct generally shall be the date on which the negligent action or omission

occurred.  Id. at 117 (citations omitted).  The only exception to this notion of accrual is the situation

when the victim is either not aware of the injury or, regardless of awareness of the injury, does not

know that some third party is responsible for the injury.  Id. (citation omitted).  Such exception is

known as the discovery rule.

New Jersey Courts on many occasions have faced the issue of a claim accrual date within the

meaning of the Tort Claims Act.  For example, in Beauchamp, the plaintiff's car was rear-ended by

a New Jersey Transit bus.  164 N.J. at 114.  The Supreme Court of New Jersey held in Beauchamp

that within the meaning of the Tort Claims Act, the plaintiff's claim accrued on the date of her

accident.  Id. at 119.  The Court explained such conclusion by the fact that the plaintiff immediately

knew that a person who injured her was a public employee -  a driver of a New Jersey Transit bus.

Id.  Therefore, in Beauchamp, the discovery rule was not of any assistance to the plaintiff.  Id.

The State heavily relies on Iaconianni v. N.J. Turnpike Auth., 236 N.J. Super. 294 (App. Div.

1989), arguing that the discovery rule should not apply to Plaintiff in the case at bar.  (Def. State of

NJ Opp. Br. at 24-25).  In Iaconianni, the plaintiff was fatally injured when two tractor trailers

hooked  bumpers and crossed the median divider.  236 N.J. Super. at 295-296.  The initial police

report indicated that the tractor trailers jumped over the center guardrail.  Id. at 296.  More than a

year later, the plaintiff's counsel deposed an eye-witness of the accident who indicated that the

tractor trailers had not jumped over the center guardrail but rather broke through it.  Id.  Based on

the eye-witness testimony, the plaintiff's counsel sought to file a notice of late claim against the New

Jersey Turnpike Authority under the Tort Claims Act.  Id.  The Appellate Division held that the

discovery rule was not applicable to the plaintiff.  Id. at 297.  The Appellate Division found that had

the plaintiff's counsel exercised reasonable diligence and intelligence, he should have timely

discovered that the plaintiff might have a cause of action against the New Jersey Turnpike Authority.

Id.  The court emphasized that the difference between the police report and the eye-witness version

of the accident was simply "one of focus on a different theory of fault, and not whether the guardrail

was implicated in the accident."  Id.

Here, the facts are plainly distinguishable from the facts of Beauchamp.  Unlike the plaintiff

in Beauchamp, Ms. Torres was not struck by a vehicle driven by a public employee, so it was not

clear whether a public entity or public employee may be liable for the accident.  Without some initial

basic information about Ms. Torres's accident, there was no basis for Plaintiff's counsel to conclude

that a public entity might be liable for the accident.  Plaintiff's counsel was trying to obtain such

basic information from the most reasonable source under the circumstances - the police report - but

was repeatedly denied access to that document.

The police report here could have been a crucial starting point of  Plaintiff's  investigation.

If the police report showed that Ms. Torres was crossing the street at the crosswalk, it might have indicated to Plaintiff's counsel that a flaw in the road design may have contributed to the accident. On the other hand, if the police report showed that Ms. Torres was crossing the road beyond the crosswalk, Plaintiff's counsel could have advised Plaintiff not to pursue the lawsuit altogether. Without the police report or any witness to the accident, Plaintiff's counsel had no cause to believe Defendants might be responsible for her death.

The State points out that other articles with regard to Ms. Torres's accident were available to Plaintiff's counsel within ninety days after Ms. Torres's death and that those articles should have put Plaintiff's counsel on notice that a public entity might be liable for the accident. (Def. State of NJ Opp. Br. at 13). However, the Court can not conclude that either Plaintiff or Plaintiff's counsel did not act diligently only because they failed to discover and read certain newspaper articles relevant to Ms. Torres's accident that might have put them on notice about the public entities' involvement in this matter. The crucial fact is that Plaintiff's counsel did diligently pursue the police report, with no success.

In fact, the State implicitly admitted that until the present time it was not clear at which point of Route 165 or at which intersection Ms. Torres was struck by the car. (See Def. State of NJ Opp. Br. at 9). Plaintiff's counsel made reasonable efforts to obtain a police report and to learn where exactly on Route 165 Ms. Torres's accident occurred. Even if the Court reads the Iaconianni case in the way proposed by the State, Defendant's reliance on that case is not justified. In Iaconianni, the police accident report was readily available to the plaintiff's counsel who had a chance to conduct visual inspection of the site of the accident. Here, in contrast, Plaintiff's counsel was denied access to the police report and did not have any other information about the exact location of Ms.

Torres's accident until January 31, 2007. The Court finds it unreasonable to conclude that Plaintiff's counsel here was not diligent only because he chose not to inspect every yard of Route 165 in Lambertville and failed to question every shop owner who might have seen the accident. It was diligent for Plaintiff's counsel under the circumstances of this case merely to seek the police report as a starting point of proper investigation.

Moreover, the State clearly misstates the holding of Iaconianni when it says that "[Appellate Division] held that the plaintiff could have observed the condition of the [guardrail] after the accident, by examining the accident scene and found that plaintiff was not diligent by failing to do so." (Def. State's Opp. Br. at 25). Importantly, the Appellate Division in Iaconianni never stated that the plaintiff was not diligent in failing to examine the scene of the accident, but rather it noted that "[r]easonable diligence required an investigation of the accident that went beyond mere reading of the police report before the discovery rule may be invoked." 236 N.J. Super. at 297-298 (emphasis added). Thus, the Iaconianni Court does not state that one must inspect a scene of the accident in order to conduct a diligent investigation. Rather, the Iaconianni Court suggests that a diligent counsel should conduct some additional factual or legal (or both) research based upon an initial police accident report.

The State disregarded this material aspect of the Court's reasoning in Iaconianni where "it was apparent to three other attorneys representing three other plaintiffs within 90 days of the accident that the guardrail may not have performed its anticipated purpose by not preventing the tractor trailers from crossing over into [ongoing] traffic lanes." Id. at 297 (emphasis added). Those three attorneys timely filed claims against the New Jersey Turnpike Authority based on the police report without relying on the eye-witness testimony. Id. It was material for the outcome of Iaconianni that

10

the police report was available within ninety days after the date of the accident.  Here, the police

report has not been available to Plaintiff since the date of the accident in April 2006 until the date

Plaintiff filed the present Motion for Leave to File Late Claim in May 2007.  Therefore, the State is

not accurate in applying the Iaconianni holding to the case at bar in support of its position.

Therefore, the Court holds that the date of accrual of the claim against the State and the City

should be January 31, 2007 - the date when  Plaintiff's counsel came into possession of the article

describing Ms. Torres's accident.  To hold otherwise would be to invite police and other government

investigators to delay release of police accident reports when a government employee or entity may

be potentially liable.  Such result would  be inconsistent with the purposes of the Tort Claims Act.

**B.**      ***Notice of Late Claim: N.J.S.A. 59:8-9***

In the alternative, Plaintiff argues that even if the Court finds that the date of accrual of the

claim against Defendants is the date of Ms. Torres's accident or the date of her death, Plaintiff

should be entitled to file Notice of Late Claim against Defendants in accordance with N.J.S.A. 59:8-

9.  The Court in its discretion can grant Plaintiff an opportunity to file Notice of Late Claim against

a public entity within one year after the accrual of the claim if (1) Plaintiff demonstrates

extraordinary circumstances explaining why the plaintiff did not file a Notice of Claim within ninety

days after the date of the claim accrual and (2) if the public entities have not been substantially

prejudiced by such late notice.  (See  N.J.S.A. 59:8-9).

**1.        Extraordinary Circumstances**

According to the New Jersey Supreme Court, the notice of claim provisions of the Tort

Claims Act "were not intended as a trap for unwary." Lowe v. Zarghami, 158 N.J. 606, 629 (1999)

(citation omitted).  "Generally, [the court should] examine more carefully cases in which permission

to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." Id. (citation omitted).  Because there is no precise definition of "extraordinary circumstances" justifying failure to file timely notice of claim, each case should depend on its unique circumstances. Id.

Both the State and the City rely on Blank v. City of Elizabeth, 162 N.J. 150 (1999), in arguing that Plaintiff did not establish any extraordinary circumstances to justify Notice of Late Claim.  In Blank, a sixty-one year old Russian immigrant tripped over a pipe that was protruding from the sidewalk. Id. at 151.  Initially, the plaintiff's counsel in Blank was going to sue a private party because he thought that the pipe belonged to the private party. Id. at 151-152.  However, more than eight months after the accident the plaintiff's counsel was advised by the private party's insurance carrier that the pipe belonged to City of Elizabeth. Id. at 152.  The plaintiff's counsel subsequently filed a notice of a late claim with City of Elizabeth. Id.  The plaintiff's counsel argued that the "extraordinary circumstances" exception to the Tort Claims Act was applicable in that case because the plaintiff's inability to speak English and the use of a translator caused some confusion as to the true owner of the pipe. Id.  The New Jersey Supreme Court, however, disagreed with the plaintiff and held that mere visual inspection of the place of the accident would have led the plaintiff to conclude that the pipe was owned by the public entity. Id. at 152-153.  Therefore, the New Jersey Supreme Court refused to apply the "extraordinary circumstances" exception. Id. at 153.

Here, however, Defendants' reliance on Blank is unwarranted, and unique facts of this case qualify as extraordinary circumstances.  The fact that Plaintiff's counsel here did not have information about the exact location of Ms. Torres's accident and was denied access to the police

report clearly makes this case distinguishable from <u>Blank</u>. Unlike the counsel in <u>Blank</u>, Plaintiff's counsel here did not know what location he had to inspect. Plaintiff's counsel received the first indication that a state entity might have been involved in the accident when he read the newspaper article on January 31, 2007. He promptly filed Notice of Claim thereafter. Therefore, coupled with the fact that Plaintiff had difficulty locating Ms. Torres's parents in Mexico and Plaintiff was initially advised he had no cause of action due to Ms. Torres' immigration status, Plaintiff's inability to obtain the police report creates a unique factual basis sufficient to establish extraordinary circumstances in the present matter.

2.      **Prejudice to Public Entities**

The second prong of the "Notice of Late Claim" provision of the Tort Claims Act is the requirement that the Government should not be substantially prejudiced by Notice of Late Claim filed within one year after the accrual of the claim. N.J.S.A. 59:8-9. Here, both Defendants argue that they were substantially prejudiced by Plaintiff's failure to file a notice of claim within ninety days from the date of Ms. Torres's death. (Def. State of NJ Opp. Br. at 37); (Def. City's Opp. Br. at 9). However, case law suggests that Defendants' arguments regarding prejudice are ungrounded.

The facts of the case at bar are substantially similar to the facts of <u>Zwirn v. County of Hudson</u>, 137 N.J. Super 99 (N.J. Super. Ct. Law Div. 1975). In <u>Zwirn</u>, plaintiff's decedent was killed in a car accident in Hudson County, New Jersey. <u>Id.</u> at 101. The Office of the Prosecutor of Hudson County and the Hudson County Police Department were thoroughly investigating the accident because a death was involved. <u>Id.</u> More than six months after the accrual of the claim, plaintiff in <u>Zwirn</u> sought to file Notice of Late Claim against the proper defendant, the State of New Jersey. <u>Id.</u> at 101-102. The court in <u>Zwirn</u> held in pertinent part that the delayed notice of claim did

not substantially prejudice the State of New Jersey.  Id. at 105.  The court based its conclusion on the fact that county officials - the Office of the Prosecutor and the Police Department - were thoroughly and exhaustively investigating the deadly accident, and that all materials of the investigation were available to the State of New Jersey.  Id.  The Supreme Court of New Jersey approved such line of reasoning by referring to the Zwirn holding in Lowe.  158 N.J. at 628.

Here, the Lambertville Police Department and the Hunterdon County Prosecutor's Office have been thoroughly investigating the accident and death of Ms. Torres.  Although the State claims that it still does not have the police report, the Court can reasonably anticipate that the police report and any other investigation materials relevant to Ms. Torres's accident can be obtained from the Lambertville Police Department and the Hunterdon County Prosecutor's Office.  Therefore, applying the reasoning of Zwirn to the case at bar, Defendants here are not substantially prejudiced by Plaintiff's Notice of Late Claim.

### 3.        Viability of the Underlying Cause of Action

The City argues that Plaintiff should not be permitted to file Notice of Late Claim because under no scenario can the City be liable in the underlying action.  (Def. City's Opp. Br. at 10).  The City presents testimony that Route 165 is a road totally under the control of the State of New Jersey and the New Jersey Department of Transportation.  Id.

Although the City presents a well-reasoned argument, at this point the Court can not conclude that Plaintiff's complaint against the City absolutely lacks viability.  The pleadings contain a great degree of uncertainty with regard to the exact location of Ms. Torres accident.  Therefore, the parties should be given a chance to base their legal conclusions about viability of the present claim upon the official police report, which should help to clarify the precise location of Ms. Torres's accident.  The

City shall retain the right to file a Motion to Dismiss or other dispositive motions after conducting additional discovery.

## III.   <u>CONCLUSION</u>

For the foregoing reasons the Court finds that Plaintiff has demonstrated that the date of accrual of the claim against the State and the City was January 31, 2007.  Therefore, the Court finds that Plaintiff timely filed Notice of Claim against those public entities in accordance with N.J.S.A. 59:8-8.  Alternatively, the Court finds that Plaintiff established the existence of extraordinary circumstances and showed that Defendants have not been substantially prejudiced by the Notice of Late Claim in accordance with N.J.S.A. 59:8-9.  Therefore, Plaintiff's Motion to File the Notice of Late Claim is granted.

An appropriate Order accompanies this Memorandum Opinion.

**Dated: July 23, 2007**